## CLINTON SMITH V. STATE OF NEBRASKA.

58 531
62 144

FILED MAY 3, 1899.   No. 10603.

1. **Assault: INTENT TO INFLICT GREAT BODILY INJURY: INFORMATION.** The effect of section 17b of the Criminal Code, relative to an assault with intent to inflict great bodily injury, was to create a new and substantive crime,—one purely statutory,—and it is sufficient in an information to charge the crime in the language of the statute without a statement of the means with which the assault was committed. *Smith v. State,* 34 Neb. 689; *Murphey v. State,* 43 Neb. 34.)

2. ——: ——. · The term "assault," used without qualification, has a clear and established import in criminal law.

3. ——: ——: **QUESTION FOR JURY.** Whether the particular intent elemental of a charge of assault with intent to inflict great bodily injury has been shown is generally a question of fact for the jury.

4. **Instructions: CRIMINAL LAW.** It is not available matter of complaint for a person, at whose request a jury has been instructed on a specific point, that the court gave an instruction on his own motion on the same subject.

5. **Assault: CONVICTION: EVIDENCE.** The verdict *held* not warranted and sustained by the evidence.

ERROR to the district court for Butler county. Tried below before SEDGWICK, J. *Reversed.*

*E. R. Dean,* for plaintiff in error.

*C. J. Smyth, Attorney General,* and *W. D. Oldham, Deputy Attorney General,* for the state.

HARRISON, C. J.

An information was filed in the district court of Butler county which contained two counts, in the first of which the plaintiff in error was charged with an assault upon Charles T. Jenkins with intent to kill and murder him, and in the second count the accusation was of an assault upon the same person with intent to do him great bodily injury. The accused on arraignment pleaded not guilty,

and a trial resulted in a verdict of his guilt of the charge in the second count of the information and not guilty as to the first. The sentence was of imprisonment in the penitentiary for a term of one year.

It is urged that the information is insufficient; this refers to the count of the charge of which the accused was determined guilty. The offense was charged in the language of the statute. The exact question here raised was under consideration and was the subject of decision by this court in the case of *Murphey v. State*, 43 Neb. 34, and it was then announced that a complaint in which the offense was alleged in the language of the statute was sufficient. We are now satisfied that the correct rule was then stated and will adhere to it.

It is argued that the section 17b of the Criminal Code, upon which the prosecution was based, is defective, in that in outlining the offense the word "assault" is used and the acts which will constitute it are not set forth; and further, that an "assault" is not specifically defined in our Code. The word "assault" has an exact and well-known general import when used in the sense in which it appears in the section of the Criminal Code to which reference has been made. The applicable definition is given in the text-books on criminal law and the law dictionaries. The signification which it has in criminal law is the one which must be accorded it in the portion of the statutes herein drawn into actual use.

It is contended that the trial court erred in the submission in its instructions to the jury of the question of the guilt or innocence of the accused of the crime charged in the first count of the information, for the reason that there was no evidence which tended to support the allegations of said first count. For the accused there was requested and given an instruction which challenged the attention of the jury to the guilt or innocence of the party on trial of the crime alleged in the first count of the information. This being true, he cannot be heard to complain that the court directed the attention of the

jury to the same subject. (*Richards v. Borowsky*, 39 Neb. 774; *Jonasen v. Kennedy*, 39 Neb. 313; *City of Omaha v. Richards*, 49 Neb. 244.)

It is strenuously urged that the evidence is insufficient to sustain the verdict. Relative to the main elemental facts of the occurrences upon which the charge of the information was predicated there was no conflict in the evidence, but of some of the incidents or acts there were disagreements or differences. We have given the evidence a careful examination and do not deem it necessary to quote from it or summarize all of it here. We will but refer specifically to a few of the main facts. It appeared that the accused and his son had, each in charge of a team of horses, gone from the farm to the market with a load of wheat and were returning home when they discovered two parties, one of them, Charles T. Jenkins, leading and driving along the highway some live stock (cows and colts), of which the accused evidently claimed ownership or right of possession. He told the son to follow the parties and keep them in sight. He went home, unhitched the team, hitched one horse to a "road cart," in which he had placed, or had procured it to be done, a shotgun, jumped into the cart, and drove along the road after the parties who had the stock until he overtook them, when he alighted from the cart, took therefrom the shotgun, and accosted Jenkins, who was walking along the highway behind the stock, in the following language. This is of the accused's testimony: " I says, 'Where are you going with this stock?' I says, 'You black son of a bitch,' " and demanded that the stock be released. There was more similar language on the part of the accused, but no direct verbal threats of the doing of any specific acts. Smith punched Jenkins on the legs and in the sides with the barrel end of the gun. Jenkins expressed himself as not being able to stand "that kind of an argument," and the stock was released. Smith, so Jenkins stated, then said: "Now, you son of a bitch, take this stuff back where you got it," and commenced "jabbing" him again with the

gun, and it further appears that during the continuance of the affair, at a time when Jenkins had hold of the gun, the accused used his fist and struck Jenkins a number of times on the head and in the face. The foregoing will serve to convey a general idea of what happened at the time it is alleged in the information herein the crime of which he was adjudged guilty was committed by the plaintiff in error. The main point is in regard to the appearance of the intent on the part of the accused to inflict great bodily injury upon the party alleged to have been assaulted with such intent. It has been stated by this court: "The term 'great bodily injury,' as there employed [referring to the statute], is not susceptible of a precise definition, but implies an injury of a graver and more serious character than an ordinary battery; and whether a particular case is within the meaning of the statute is generally a question of fact for the jury." (*Murphey v. State, supra.* See, also, a discussion of the subject of intention in the opinion in *Krchnavy v. State,* 43 Neb. 337.) A careful consideration of all the evidence convinces us that there was not sufficient therein to warrant the finding by the jury that there was existent the intent which is a requisite of the statutory crime, of the guilt of which the verdict convicted the accused. The record before us discloses an aggravated assault and battery by him, but not an assault with intent to do great bodily injury; hence the sentence must be reversed and the cause remanded.

REVERSED AND REMANDED.